### DES MOINES LIFE ASS'N v. CRIM.

(Circuit Court of Appeals, Fourth Circuit. November 29, 1904.)

No. 529.

1. APPEAL—REVIEW—HARMLESS ERROR.

Where the demurrer of a defendant to a replication setting up an estoppel, going to the right of the defendant to maintain the defense pleaded as to a part of the claim sued on, was overruled, and defendant thereupon rejoined, and went to trial on the issues made by the declaration and plea, a finding and judgment for plaintiff on such issues renders the ruling on the demurrer immaterial, and it will not be reviewed in the appellate court.

2. TRIAL—DEMURRER TO EVIDENCE—OPERATION AND EFFECT.

A demurrer to evidence admits all the facts directly proved by, or that a jury might fairly infer from, the evidence, and the court is justified in finding a fact in favor of the demurrant only when the evidence is such that a contrary finding, if made by a jury, would be set aside.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 356.]

Morris, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of West Virginia.

John W. Davis (Geo. R. Sanderson, on the brief), for plaintiff in error.

John Bassel (Melville Peck, on the brief), for defendant in error.

Before MORRIS, BRAWLEY, and PURNELL, District Judges.

BRAWLEY, District Judge. This is an action of assumpsit upon a policy of insurance, commenced in Barbour county, W. Va., and removed by the defendant, plaintiff in error, to the United States Circuit Court for the Northern District of West Virginia. The plaintiff in error issued its policy of insurance for $2,000 on the life of Estella Koon, September 25, 1896. She died February 26, 1899, and her husband, J. L. Koon, the beneficiary of the policy, assigned it March 9, 1899, to J. N. B. Crim, defendant in error, who brought suit thereon July 13, 1899. The defendant company pleaded, first, the general issue; and, second, that the insured had made false answers in her application to certain questions propounded in the application for insurance, and warranted her answers to be true; that these answers were material, were falsely made, and that the policy had therefore been obtained by fraud. To the specifications of defense the plaintiff entered a general replication denying each allegation as to the several questions seriatim, and tendered a special replication, which alleged, in substance, that on March 9, 1899, J. L. Koon, the beneficiary, assigned the policy to the plaintiff for the sum of $2,000, the face value thereof, the terms agreed upon being the payment of $500 in cash to Koon, and the remainder, $1,500, to be paid when the policy was collected from the defendant company. Shortly after the assignment Koon exhibited to the plaintiff two letters of date March 7, 1899, and March 15, 1899, of C. E. Rawson, president of the defendant company, which are as follows:

"Des Moines, Iowa, March 7, 1899.

"J. L. Koon, Speers, Pa.—Dear Sir: I am just in receipt of a letter from Mr. Loar notifying us of the death of your wife. As per request I herewith enclose your blanks for making proofs. Kindly see that they are carefully filled out and returned to us at your earliest convenience, and if found satisfactory to our board you may rest assured that the claim will be paid in full within the ninety days allowed by the terms of the policy.

"Yours respectfully,                     [Signed]        C. E. Rawson, President."

"Des Moines, Iowa, March 15, 1899.

"J. L. Koon, Speers, Pa.—Dear Sir: Yours of the 13th enclosing proofs as stated came this morning. This matter will come before our board in a few days, and if anything further is needed will notify you.

"We are not authorized to do business in Pennsylvania, and for that reason we cannot send our agent there to solicit. However, if you want a policy with us you have a perfect right to apply direct to the office for it, and it seems to me that the full payment ought to satisfy you something of the way we do business, and you certainly know enough of the history of the company to satisfy yourself as to its future. I enclose you a little of our late printed matter, which will show you something of what we are doing.

"Yours respectfully,                     [Signed]        C. E. Rawson, President."

And the defendant in error alleged that he was induced to believe and did believe that the defendant fully intended to pay the policy upon proofs being made, and, relying thereon, he paid Koon

the further sum of $1,500; that he would not have made such payment except for the statements contained in the letters; that Koon was insolvent; and that plaintiff in error was estopped from setting up the matter as relied upon in its specifications of defense. To this special replication plaintiff in error demurred. Demurrer was overruled, and exceptions taken. The defendant then entered a general rejoinder to the special replication, and at the same time joined issue upon the general replication to the special plea.

The case came on to be heard April 23, 1902, before a jury, and the following verdict was rendered:

"J. N. B. Crim vs. Des Moines Life Association. In Assumpsit.

"This day came again as well the parties, by their counsel, as the jury which was impaneled and sworn to try the issue joined in this case, and, having heard the completion of the evidence and the arguments of counsel, on their oaths do say: 'We, the jury, find for the plaintiff the sum of $2,367.77, if upon the defendant's demurrer to the evidence the court shall be of the opinion that the law of the entire case is for the plaintiff; and if the court shall be of the opinion that the law of the case is for the plaintiff only so far as the $1,500.00 paid before the receipt of the letters of C. E. Rawson is concerned, then we find for the plaintiff the sum of $1,758.25; and if the court shall be of the opinion that the law of the case upon said demurrer is for the defendants, then we find for the defendants."

And the following order was entered by the presiding judge:

"The defendant having demurred to the evidence in this case before the rendition of the verdict aforesaid, in which demurrer the plaintiff joined, the same was argued by counsel, and the court takes time to consider its judgment thereof."

At the October term, 1903, the following judgment was entered:

"J. N. B. Crim, Assignee of J. L. Koon, vs. Des Moines Life Association. In Assumpsit.

"This day came the parties by their attorneys, and the plaintiff here waiving claim to the larger sum found by the jury in its verdict found herein on the 28th day of April, 1902, and being willing to accept judgment for the alternative sum found by the said jury, to wit, the sum of $1,758.25, therefore it is considered by the court that the defendant's demurrer to the evidence be overruled as to said sum, and that the plaintiff do recover of the defendant the said sum of $1,758.25 and $758.25, with interest thereon from April 28, 1902, the date of the said verdict; and it is further considered that the plaintiff do recover of the defendant his costs in this behalf expended."

The errors assigned are: First, in overruling the demurrer to the special replication; second, in holding that the matters and things in said special replication alleged were sufficient to constitute an estoppel in pais; third, in overruling the demurrer to the evidence; fourth, other errors apparent upon the face of the record.

The greater part of the argument before us has been addressed to the question of estoppel raised by the plaintiff's special replication to the defendant's pleas, and the error of the court in not sustaining the defendant's demurrer to it, but it seems to us that in pleading over and in going to trial upon the issue of fraud in the procuring of the policy, and the judgment of the court below being against the company upon that issue, the question of estoppel is not properly before us. The plaintiff below, in his special replication to the defendant's plea that the policy was void through fraud

in its procurement, has, in effect, said that, granting that the company has a good defense on the merits, and that the policy was in fact procured through fraud, yet the company, by its acts or representations, has intentionally or negligently induced plaintiff to believe that the policy was good, and, acting upon that belief, the plaintiff has paid out his money in the purchase of the policy, and will be prejudiced if the company is permitted to deny its validity. The defendant company, by its demurrer, has asserted that it has done no act, concealed no fact, made no misrepresentation, which would legally prevent its making its defense, and by the overruling of the demurrer the case went to trial upon the merits of its defense. Now, if there was no fraud in the procuring of the policy, and the same is valid, and is an existing obligation of the company, the question of estoppel is immaterial. We are inclined to think that the letters of Rawson did not create an estoppel; but in our view a decision on that point is unnecessary, for, the case having gone to trial upon the issue made by the special plea, and the court below on the demurrer to the evidence having decided against the company upon that issue, we feel ourselves bound by that judgment. If the record sustained the plaintiff in error's contention that the court below found "that there was fraud in the procuring of the policy which vitiated it, but that plaintiff in error was estopped by the letters written Koon, and by him exhibited to the defendant in error, from claiming this defense as against the defendant in error," the case would be otherwise; but counsel for defendant in error denies the correctness of this statement. In explanation of the fact that judgment was entered only for the sum of $1,500 and interest, they say that, after the case had been held under advisement for more than a year, being anxious to get their money, they expressed a willingness to take judgment for the lesser amount, and judgment was so entered. The judgment, as entered, contains these words: "And the plaintiff here waiving claim to the larger sum found by the jury in its verdict found herein on the 28th day of April, 1902, and being willing to accept judgment for the alternative sum found by said jury," etc. We must take the record as it comes to us. We cannot read into this judgment what does not appear upon its face. There is no motion for new trial or exceptions, and the only question therefore is whether, upon the case as presented in the record, the judgment should be sustained. As already stated, the case went to the jury upon issues of fact, and at the conclusion of the testimony on both sides it was taken from the jury by a demurrer to the evidence and submitted to the judge, who, after long deliberation, gave the judgment appealed from. The issues of fact made in the pleadings and to which testimony was directed on the trial were that Estella Koon had made false answers to certain questions in her written application for insurance, and the defendant averred "that she was not then in good health; that she was then afflicted with lung disease of a tuberculous character; that she was afflicted with various diseases pertaining to her menstrual functions; that she had previously suffered from various illnesses and local diseases; that she had sustained a personal injury or

accident previous to the making of said answers by being thrown from a horse and seriously injured; that she had several miscarriages; and that numerous members of her family had died with consumption." The testimony upon the trial was that she was a healthy woman at the time of her application for insurance and up to a short time before her death; that she died of acute pneumonia, after a short illness, and there had been an epidemic of pneumonia in the neighborhood where she was living at the time of her death, and that she did not have consumption. Upon that issue we think it clear that the defendant company failed in its proofs. There was testimony that one of her brothers had died with consumption, and there was some testimony that one of her aunts had died of the same disease. Her father and mother were proved to be both alive. There was some testimony that she had had some irregularities in menstruation, but the medical witness who gave this testimony upon cross-examination said "they were just the irregularities that occur to all women." There was some testimony of a hearsay character that she had been thrown from a horse, but nothing to show that she had been seriously injured thereby, and that one of the miscarriages proved was attributed to this fall; the testimony leaving it in some doubt as to whether she knew at the time that she had a miscarriage, though, of course, she must have known it after it occurred; and it is in proof that the medical witness who attended her at the time (and the chief witness for defendant at the trial), about two years afterwards, when the policy now sued on had lapsed for nonpayment of premiums, upon an application of Estella Koon to reinstate the same, gave a certificate that she was at that date in good health, and a proper insurance risk. The testimony is that the answers to the questions in the forms described in the application were all written by the medical examiner; most of them are in form of "Yes" or "No," to nearly 100 questions; and the testimony leaves it in doubt whether each question was propounded directly to the applicant. There is no doubt whatever in our minds that if the case had been submitted to a jury the verdict would have been for the plaintiff for the full amount sued for, and it is at least doubtful whether the judge would have set aside the verdict. That the woman was in good health at the time the policy was taken out, and up to her last illness was a healthy woman, was fully proved, and there was no proof that her death was due to any hereditary tendency to consumption, or that the miscarriages contributed to it.

The practice of demurring to evidence, although of ancient origin, is now little availed of. It prevails in the state of West Virginia, where this case was tried. Barton's Law Practice states the principle that governs in the state of Virginia, and, so far as we have examined cases in other states where the same practice is recognized, it is a correct statement of the rule. On page 222 he says:

"In ascertaining the facts proved directly or by inference, we must not be unmindful of the effect of a demurrer to evidence. By it the demurrant allows full credit to the evidence of the demurree, and admits all the facts directly proved by, or that a jury might fairly infer from, the evidence; and in de-

termining the facts inferable inferences most favorable to the demurree will be made in cases in which there is a grave doubt which of two or more inferences shall be deduced. In such cases it would not be sufficient that the mind of the court should incline to the inference favorable to the demurrant to justify it in making that inference the ground of his judgment. Unless there be a decided preponderance of probability or reason against the inference that might be made in favor of the demurree, such inference ought to be made. The demurrer withdraws from the jury, the proper triers of facts, the consideration of the evidence by which they are to be ascertained; and the party whose evidence is thus withdrawn from its proper forum is entitled to have it most benignly interpreted by the substitute. He ought to have all the benefit that might have resulted from a decision of the case by the proper forum. If the facts of the case depend upon circumstantial evidence, or inferences from facts or circumstances in proof, the verdict of a jury ascertaining these facts would not be set aside merely because the court might have made inferences different from those made by the jury. To justify the grant of a new trial when it depends on the correctness of the decision between different inferences to be drawn from the evidence, it would not suffice that, in a doubtful case, the court would have made a different inference. The preponderance of argument or probability in favor of this different inference should be manifest. When the question is whether or no a fact ought to be taken as established by the evidence, either directly or inferentially, in favor of the demurrer, I do not know a juster test than would be furnished by the inquiry, would the court set aside the verdict had the jury on the evidence found the fact? If the verdict so finding the fact would not be set aside, it ought to be considered as established by the evidence demurred to."

The judgment of the court below is affirmed.

MORRIS, District Judge, dissents.